UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NORTH WIND CONSTRUCTION SERVICES, LLC, a Delaware limited liability company, | Case No. 4:21-cv-00096-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| CAMPOS EPC, LLC, a Colorado limited liability company, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is Plaintiff North Wind Construction Services, LLC's Motion in Limine to Exclude Certain Testimony and Opinions of Defendant Campos EPC, LLC's Expert Witness, Myron Temchin. Dkt. 75. Because oral argument would not significantly aid its decision-making, the Court will decide the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons below, the Motion is GRANTED in PART and DENIED in PART.

## II. BACKGROUND

Plaintiff North Wind Services, LLC ("North Wind") is a general contractor. Defendant Campos EPC, LLC ("Campos") is an engineering firm that helps contractors estimate the costs of construction. In 2017, North Wind was considering submitting a bid to construct a water treatment plant in Tennessee for the Department of Energy ("DOE"). Dkt. 41, at 2. To that end, it asked Campos to provide estimation services to help formulate

MEMORANDUM DECISION AND ORDER - 1

its bid. North Wind asked Campos to "provide quantity take-offs and estimates for structural concrete, soil excavation/backfill, and structural steel" for two major portions of the plant: the Headworks Facility and the Treatment Facility. *Id.*

Campos returned a proposal for scope of work.[1] After some back-and-forth, North Wind sent Campos a contract (the "Agreement"), which Campos executed. This Agreement incorporated a set of general provisions providing that Campos would "be responsible for the *professional quality* and *technical accuracy*" of its estimates. Dkt. 1, at 7 (emphasis added).

Campos prepared and submitted estimates that did not factor in structural concrete for the Headworks Facility. North Wind uncritically incorporated Campos's concrete-less estimates into its bid, which won the DOE contract. Dkt. 49, at 4; Dkt. 41–1, at 6. When North Wind began soliciting subcontractors to source and pour the concrete for the plant, it discovered that its bid had significantly underestimated the amount of concrete required.

North Wind raised the discrepancy with Campos and filed this lawsuit for breach of contract. At issue is whether Campos's estimates were of professional quality and technically accurate. In response to North Wind's Motion for Summary Judgment, Campos filed an expert report from an engineer named Myron Temchin. Dkt. 49-5. Temchin's report stated Campos's estimates were of professional quality and technically accurate within the guidelines of the Association for the Advancement of Cost Engineering ("AACE"), (*id*. at 20–35), and that North Wind mismanaged its estimating process, which

---

[1] To the extent certain background information is omitted here, the Court incorporates the facts as outlined in its summary judgment order by reference. *See generally* Dkt. 67.

caused errors and omissions in its bid to the DOE (*id.* at 37–40).

The Court declined to grant summary judgment on certain elements of North Wind's breach of contract claim, finding that "professional quality" and "technical accuracy" were ambiguous terms the jury would need to define. Dkt. 67, at 20. It also declined to exclude Temchin's written report, finding it was relevant and reliable and thus admissible under Federal Rule of Evidence 702. Dkt. 67, at 14. The Court acknowledged, however, that parts of Temchin's report were a fit subject for a motion in limine. *Id.* at 11, 14. North Wind now moves to exclude certain material in Temchin's report, as well as certain testimony it anticipates Temchin will offer at trial. Dkt. 75.

### III. LEGAL STANDARD

A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (citation omitted), "a district court has discretion in ruling on a motion in limine." *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991).

### IV. ANALYSIS

North Wind moves to exclude seven items of testimony or opinion from the jury: (1) Temchin's written report; (2) testimony or opinion that the Agreement incorporated the AACE guidelines; (3) testimony or opinion that the AACE guidelines are industry standards helpful in interpreting the ambiguous terms; (4) opinions on contract interpretation; (5) opinions on Campos's motivations, intent, or state of mind; (6) testimony

about the character of Campos's employees Jacob Decker and Anthony Aguilar; and (7) Figure 2 and Table 5 of Temchin's Report. The Court considers each item in turn.

### 1. Written expert report

North Wind argues that Temchin's written report is hearsay and should be excluded as such. Campos responds that it has no intention of introducing the report as an exhibit at trial. Dkt. 76, at 2. The Court will hold Campos to this position. The written report may not be admitted as an exhibit.[2] This is consistent with the Court's trial practice. Written reports are hearsay and duplicative of oral testimony and do not come into evidence.

### 2. Opinions on Incorporation of AACE Guidelines

North Wind moves to preemptively exclude any testimony or argument suggesting that the AACE guidelines were incorporated into the Agreement. The Court has already found that the AACE guidelines were not incorporated into the Agreement. Dkt. 67, at 20. It would be misleading to testify or argue otherwise, and Campos has stipulated that it will not. Dkt. 76, at 3. Thus, Neither Campos nor Temchin may testify or argue at trial that the AACE guidelines were expressly incorporated into the Agreement.

### 3. Opinion that the AACE Guidelines are Industry Standard

North Wind moves to exclude any argument that the AACE guidelines are industry standards that could help determine the meaning of "professional quality" or "technical accuracy." Idaho law allows custom and trade usage to inform the interpretation of ambiguous contract terms when "the evidence will be helpful in clarifying the ambiguity."

---

[2] As described below, this ruling will not prevent *material* from the report from being introduced, including graphics.

*Perkins v. Highland Enterprises, Inc.*, 817 P.2d 177, 182 (Idaho 1991), *partially superseded by statute on other grounds as stated in Shore v. Peterson*, 204 P.3d 1114, 1122 (Idaho 2009). Evidence of such custom may be offered to a factfinder so long as it satisfies the Rules of Evidence. *See, e.g., Isaak v. Journey*, 15 P.2d 1069, 1072 (Idaho 1932) (holding trial court did not err by admitting or refusing to strike testimony from three witnesses seeking to establish a trade usage or custom); *Itek Corp. v. Chicago Aerial Indus., Inc.*, 274 A.2d 141, 143 (Del. 1971) (relying on *Isaak*, 15 P.2d at 1072) ("It is . . . entirely proper for [an expert] to define an uncommon term according to the customs and usages of the trade or business with which he is familiar."); 1A Bruner & O'Connor Construction Law § 3:79 (2022) ("The existence and scope of the usage of trade is often a question of fact . . . Testimony from individuals knowledgeable about trade custom is one method such evidence is presented.").

 For such evidence to conclusively resolve a contractual ambiguity, however, the custom or practice must be "clearly proven." *Perkins*, 817 P.2d at 182. That is, it must have been either known to both parties at the time of signing, or else be "so notorious, universal, and well established" that such knowledge can be "conclusively presumed." *Isaak*, 15 P.2d at 1072; *see also* Restatement (Second) of Contracts § 220(2) (1981) ("When the meaning attached by one party accorded with a relevant usage and the other knew or had reason to know of the usage, the other is treated as having known or had reason to know the meaning attached by the first party.").

Here, as noted, the AACE guidelines were not incorporated into the Agreement. *See* Dkt. 67, at 20. Nor were they referenced in any of the documents Temchin reviewed in

creating his report. Dkt 75-13, at 145:18–25. North Wind correctly argues that, at this stage of the litigation, Campos has not clearly proven that the AACE guidelines create an industry standard. This means the factfinder could not properly rely on the AACE guidelines to conclusively interpret the ambiguous contract terms.[3] But it does not automatically mean that Temchin's testimony *seeking to establish* the AACE guidelines as potentially helpful trade usage is inadmissible.[4]

The question properly before the Court is whether Temchin's testimony satisfies the Rules of Evidence, not whether the AACE guidelines have been proven or established to the point of being conclusive. The proper vehicle to address the "clearly proven" standard is a jury instruction, not a motion in limine. The Court thus confines its analysis to North Wind's admissibility argument: that Temchin's testimony should be excluded under Federal Rules of Evidence 702 and 403.

Federal Rule of Evidence 702 provides that testimony from a properly qualified expert is admissible when: (1) the opinion is based on sufficient facts or data; (2) the opinion emerges from reliable principles and methods; and (3) the witness has applied

---

[3] The primary Idaho cases North Wind cites involve jury reliance, not admissibility. *See, e.g., Perkins*, 817 P.2d at 182 (holding it was not reversible error for a lower court to decline to give a jury instruction on trade usage when the usage was too contradictory to be established); *Isaak*, 15 P.2d at 1069 (holding trial court did not err in admitting or refusing to strike testimony from three witnesses seeking to establish a trade usage or custom, and that testimony had established the custom to the point where the factfinder could properly rely on it); *Blaine Cnty. Title Assocs. v. One Hundred Bldg. Corp.*, 66 P.3d 221, 229 (Idaho 2002) (Eismann, J., dissenting) (explaining trade usage could not conclusively resolve an ambiguity because no evidence had been admitted to establish it).

[4] The Court's analysis here is supported by *Perkins*, 817 P.2d at 1072, which contains two separate standards, though it does not explicitly break them out. On the one hand, evidence of trade usage is "appropriate" when there is an ambiguity, and such evidence would be "helpful." *Id.* On the other hand, custom and trade usage must be "clearly proven." *Id.* If trade usage must be clearly proven before it can even be admitted, then *Perkins*' initial "helpful" standard is a nullity.

those principles and methods reliably to the facts of the case. North Wind contends that Temchin's opinions on the AACE guidelines fail every element of this test.

The problem is that the Court has already considered and ruled on North Wind's arguments. After carefully considering Temchin's report, including his assertion that the AACE guidelines constitute an applicable custom or trade usage, the Court found that it satisfied Rule 702. *See* Dkt 67, at 14 ("the Court is satisfied that Temchin's reasoning is not so tortured or farfetched that it would confuse the jury with junk science."). The Court found that the AACE guidelines, as a "useful touchstone for how practicing engineers and estimators understand terms . . . in the course of business" could "assist the finder of fact in interpreting these ambiguous terms." *Id.* at 10–11. As the Court will explain below, however, there is a difference between a "useful touchstone," illustrative of trade usage, custom, or best practice, and a binding industry standard.

Federal Rule of Evidence 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by a danger of—among other things—misleading the jury. North Wind argues that, if Temchin were allowed to testify that the AACE guidelines are an industry standard, it would mislead the jury into believing that the guidelines have a degree of universality and authority they do not have in practice. Thus, North Wind argues, the probative value of such testimony would be substantially outweighed by its tendency to mislead the jury.

Here, the AACE guidelines describe themselves as just that—non-binding guidelines:

This document is intended to provide a guideline, not a standard. It is understood that each enterprise may have its own project and estimating process and terminology, and may classify estimates in particular ways. This guideline provides *a generic and generally acceptable classification system for process industries that can be used as a basis to compare against*. This addendum should allow each user to better assess, define, and communicate their own processes and standards in the light of *generally-accepted cost engineering practice*.

Dkt. 75-3, at 138 (emphasis added). The DOE Cost Estimating Guide referencing the AACE guidelines makes a similar disclaimer: "This Guide describes suggested non-mandatory approaches for meeting requirements. Guides are not requirements documents and are not to be construed as requirements in any audit or appraisal for compliance with the parent Policy, Order, Notice, or Manual." Dkt. 75-3, at 77.

Considering that both the AACE guidelines and the DOE Cost Estimating Guide referencing those guidelines specify that they are not binding standards, it would be misleading for Temchin to portray them otherwise. He cannot opine that the AACE guidelines are binding standards in the way that the American Society of Mechanical Engineers Code or the National Electrical Code might be.[5] But Temchin can testify that the AACE guidelines are what they say they are: "a generic and generally acceptable classification system for process industries that can be used as a basis to compare against," and examples of "generally-accepted cost engineering practice." Dkt. 75-3, at 138.

The Court understands North Wind's concerns about establishing trade usage and

---

[5] *See* 1A Bruner & O'Connor Construction Law § 3:79 (2022) (reporting that these codes are a common method of proving usage, but that "guidelines" are less persuasive).

will address such concerns through jury instructions. Rule 403 prevents Temchin from testifying that the AACE guidelines are a binding standard or code that independently establishes the relevant standard of care. But no evidentiary rule prevents Temchin from trying to establish the AACE guidelines as a generally applicable trade custom or usage that would be helpful in interpreting the ambiguous terms.

### 4. *Opinions on Contract Interpretation*

North Wind contends Temchin should not be permitted to testify as to the meaning of terms in the Agreement.  In general, an expert's opinion is not objectionable just because it embraces an ultimate factual issue. *See* Fed. R. Evid. 703(a). "That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc*., 523 F.3d 1051, 1058 (9th Cir. 2008) (cleaned up). Whether a contract has been breached—and by whom—is an ultimate issue of law upon which an expert may not opine. *See United States for use & benefit of Mountain Utilities, Inc. v. Fid. & Deposit Co. of Maryland*, 2022 WL 1538707, at *9 (D. Idaho May 16, 2022).

Here, Temchin's report makes a number of legal conclusions. North Wind identifies at least six:

- "Campos has fully complied with the terms of its contract with North Wind." Dkt. 49-5, at ¶ 22.1.

- "[B]ased on the totality of these observations and findings, North Wind's claim is found to have no merit for cost recovery." *Id.* at ¶ 22.6.

- "Campos's estimates meet the Professional Standard of Care required in its contract with North Wind." *Id.* at ¶ 22.4.

MEMORANDUM DECISION AND ORDER - 9

- "Campos performed their estimating services in full compliance with Industry Standards and Best Practice as defined by AACE, thus meeting the Standard of Care as defined by its contract with North Wind." *Id.* at ¶ 26.3.ii.(2).

- ". . . Campos attempted to create and proactively participate in a collaborative communication process so that it could produce an accurate and fully compliant concrete estimate per its contract obligations within an industry compliant quality process." *Id.* at ¶ 24.1.

- "Campos'ss estimating deliverables are accurate and in full compliance with industry standard definitions and the standard of care of the contract." *Id.* at ¶ 21.1.

These statements are inadmissible. Each improperly draws a conclusion on an ultimate issue of law. In making such statements, Temchin has assumed the Court's role by giving instructions on the relevant law, or how to apply that law to the facts.

Campos notes that courts have permitted experts to opine on the standard of care required of a professional engineer. *See, e.g., RE Ventures, LLC v. David Evans & Assocs.*, 2018 WL 6118428, at *5 (C.D. Cal. Feb. 9, 2018); *Pinnacle Eng'rs, Inc. v. Heron Brook, LLC*, 86 P.3d 470, 472–73 (Idaho 2004). To the extent such testimony is otherwise admissible and relevant to interpreting the ambiguous contract terms, Temchin may offer such testimony at trial.[6] Temchin can opine on the standard of care required of a professional engineer and even compare this standard against the facts of the case, but he cannot take the next step and testify about whether that duty—or the contract[7]—has been

---

[6] As just discussed, Temchin may not testify that the AACE guidelines are binding standards within the cost-estimating industry such that they unquestionably constitute the standard of care.

[7] In some contexts, it may be appropriate for an expert to analyze a set of facts and opine on whether a professional standard of care has been breached. *See, e.g., Cabading v. Port of Portland*, 598 F. Supp. 3d 1009, 1019 (D. Or. 2022) (considering expert opinion as evidence of a breach of duty). Here, however,

breached. As the Court has already found (Dkt. 67, at 10), such conclusions of law will not be admitted at trial.

### 5. *Testimony about State of Mind or Intent*

North Wind objects to Temchin's opinions on Campos's state of mind or intent. Generally, experts may offer testimony about a person's state of mind in civil cases. *See* Fed. R. Evid. 704(a)–(b). Courts may, however, exclude such testimony if they find it unhelpful. *See, e.g.*, *Siring v. Or. State Bd. Of Higher Educ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) (excluding expert testimony on intent, motive, or state of mind when "the expert was no more qualified than the jury" to draw inferences on those topics from the evidence).

Here, Temchin's report contains various statements about Campos's intent or state of mind. North Wind has identified several examples:

- "Campos's estimating experience led them to the section of an AACE recommended practice knowing that it was created by industry experts." Dkt. 75-3, at ¶ 68.

- "Campos's estimating team determined . . . that their quantity estimate deliverables would range between AACE Class 3 and Class 2 accuracy levels." *Id*. at ¶ 70.

- "Campos strived to produce a 'Class 2' Estimate." *Id.* at ¶ 71.1.

North Wind makes two arguments for why opinions like these should be excluded. First, it argues that these statements violate Federal Rule of Evidence 702(a), which allows experts to give opinions when their expertise will "help the trier of fact to understand the

---

where Campos's theory is that breach of duty means breach of contract, it would be an improper conclusion of law.

evidence or to determine a fact in issue." Because the jury is independently capable of drawing inferences from the facts of the case, North Wind argues that it will not be helpful for Temchin to do that analytical legwork work for them.

This argument runs counter to the Court's previous findings. The Court has already found that Temchin's report satisfies the requirements of Rule 702 (Dkt 67, at 14), that he is qualified to testify as an expert on cost-estimating processes (*id.* at 12), and that his opinions on Campos's intent are "not unhelpful to a trier of fact" because his "close relationship with Campos makes him more-than-usually qualified to draw these inferences." (*id.* at 11). Because the Court has already found that Temchin's opinions on Campos's intent are not unhelpful, it will not exclude his testimony on this basis.

Second, North Wind argues that these statements should be excluded under Federal Rule of Evidence 403, which, as already discussed, allows evidence to be excluded if its probative value is substantially outweighed by the danger it creates of misleading the jury. North Wind's essential concern is that, if Temchin is allowed to testify about Campos's intent, the jury might believe him:

> If the Court allows Temchin . . . to bolster Campos by testifying about what he thinks Campos's intentions were, this could create an inappropriate imprimatur of credibility from someone who was not there but who supposedly is an 'expert.' The jury may place weight on Temchin's testimony because Temchin is an 'expert,' but such emphasis would be improper given Temchin's lack of percipient knowledge and lack of expertise on this topic.

Dkt. 75-1, at 14–15.

This argument is unpersuasive. It is true that Temchin did not actually observe

MEMORANDUM DECISION AND ORDER - 12

Campos's estimation process, but this fact does not prevent him from offering an interpretation of the evidence he has reviewed. Experts need not have personal knowledge of the matters they opine on. *See* Fed. R. Evid. 602. Nor does any rule prevent experts from considering intent or state of mind in civil cases. *See* Fed. R. Evid. 704(a)–(b). The jury is not likely to believe Temchin's expertise in cost-estimating extends to reading minds and give his testimony undue weight on that basis. In helping the jury weigh the credibility of Temchin's testimony, North Wind is free to impeach Temchin's perceptions, interpretations, and inferences—and to highlight that he was not present for or involved in Campos's estimation process—but the jury is also free to make as much or as little of his admissible testimony as it sees fit. The Court will not preemptively exclude this kind of testimony.

### 6.  *Testimony About Character Traits of Decker and Aguilar*

North Wind moves to preemptively exclude any potential testimony from Temchin regarding the character of Jacob Decker and Anthony Aguilar, the individuals who prepared Campos's estimate. In his deposition, Temchin spoke of his trust in and esteem for Decker. He said, for instance, "I have a ten-year plus relationship with Jacob Decker as a chief estimator. I know the quality and accuracy of Mr. Decker's work" and "I have ultimate confidence in the quality of the work that he performs." Dkt. 75-1, at 15. North Wind anticipates similar testimony at trial and argues it should be preemptively excluded. The Court agrees.

Admitting this type of character testimony would allow the jury to draw an improper propensity inference. "Evidence of a person's character or character trait is not admissible

MEMORANDUM DECISION AND ORDER - 13

to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). In other words, because this case turns on whether one of Campos's estimates was professional and accurate, it would be inappropriate for Temchin to tell the jury that Campos's estimators are professionals who characteristically do accurate work. Such testimony would allow the jury to infer that, in preparing the estimate for North Wind's bid, Campos's estimators acted with characteristic professionalism. This would violate Rule 404(a).[8] Thus, at trial, Temchin may not testify about Decker or Aguilar's character for accuracy or professionalism.[9]

### 7. *Temchin's Figure 2 and Table 5*

North Wind also moves to preemptively exclude Figure 2 and Table 5 of Temchin's report. Deposition testimony shows that Decker and Aguilar were heavily involved in creating these graphics and Temchin's input was minor. *See* Dkt. 75-1, at 18–19. The evidence also shows that the graphics were created in anticipation of litigation, well after the estimate was completed. *Id.* at 19. On this basis, North Wind contends that they are inadmissible under Federal Rules of Evidence 403 and 702 and Federal Rule of Civil Procedure 26(b). Again, the Court is not persuaded.

"The fact that counsel helped with preparation of an expert report goes to the weight to be accorded to the opinions, rather than admissibility." *Gerke v. Travelers Cas. Ins. Co.*

---

[8] North Wind also argues that this testimony would improperly allow an expert to bolster the credibility of a witness or mislead the jury, but Rule 404(a) is independently sufficient to exclude such character testimony.

[9] Nothing in this Order will prevent Temchin from testifying to these witnesses' character for truthfulness under Rules 607 and 608.

*of Am.*, 289 F.R.D. 316, 326 (D. Or. 2013) (quoting 6 Daniel R. Coquillette, Gregory P. Joseph, et. al., Moore's Federal Practice, § 26.23[5] (3d ed. 2012)). "Others may assist in the preparation of the report but the expert must freely authorize and adopt the changes as his or her own, and the final report must be that of the expert." *Id.*

Further, reliability and relevance must be distinguished from problems with expert opinions that amount to impeachment and thus do not warrant exclusion. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). "As *Daubert* confirmed, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *United States v. Wells*, 879 F.3d 900, 933 (9th Cir. 2018) (cleaned up).

Here, there is no dispute that Campos assisted significantly in the creation of the graphics, and that the graphics were created in anticipation of litigation, long after the disputed estimate had been prepared. These facts, however, are not enough to show that the graphics are not "Temchin's own," or that he did not "freely authorize and adopt" Campos's contributions. Indeed, the evidence shows that it was Temchin asking Campos for information, not Campos imposing information or opinions on Campos. *See, e.g.,* Dkt. 75-1, at 18 (asserting that Temchin took the class two definition from the AACE guidelines, sent the table to Campos, and asked Decker and Aguilar to populate it). Campos's involvement in creating the tables might render the graphics less persuasive, but it does not make them inadmissible.

Similarly, the fact that the graphics were prepared post hoc, in anticipation of

pending litigation, is a fit subject for impeachment—not exclusion. Far from precluding such reports, the Federal Rules of Civil Procedure actually *require* that experts retained in anticipation of litigation *must* provide a written report. *See* Fed. R. Civ. P. 26(a)(2)(B). Having already determined that Temchin's report is relevant and reliable, and unlikely to mislead the jury in any way impeachment could not correct, the Court will not exclude these graphics on this basis.

## V. CONCLUSION

For the above reasons, Campos may not introduce Temchin's written report as an exhibit or argue that the AACE guidelines are expressly incorporated into the Agreement. Nor may Temchin testify that the AACE guidelines are binding industry standards that conclusively and independently establish the applicable professional standard of care. Though he may testify about the applicable standard of care, he may not opine on whether this standard was breached or offer any other conclusions of law. Finally, Temchin may not testify as to Decker or Aguilar's character for professionalism or accuracy. Otherwise, the Court will admit all testimony and exhibits that satisfy the Federal Rules of Evidence and consider further objections as they arise.

## VI. ORDER

It is **HEREBY ORDERED**:

1. North Wind's Motion in Limine (Dkt. 75) is **GRANTED in PART** and **DENIED in PART**.

2. The Motion is granted with respect to the following evidence:

    a.   Campos may not introduce Temchin's written report as an exhibit at trial.

    b.   Neither Campos nor Temchin may testify or argue at trial that the AACE guidelines were expressly incorporated into the Agreement.

    c.   Temchin may not testify that the AACE guidelines are a binding code or set of independently enforceable standards.

    d.   Temchin may not opine on ultimate issues of law, such as whether Campos's estimates breached a certain standard of care or satisfied contractual terms.

    e.   Temchin may not testify about Jacob Decker or Anthony Aguilar's character for accuracy or professionalism.

3. As to all other evidence, the Motion is DENIED.

DATED: July 18, 2023

David C. Nye
Chief U.S. District Court Judge